**CITY OF DUBUQUE, Appellant,**

v.

**IOWA PUBLIC EMPLOYMENT RELATIONS BOARD, Appellee.**

No. 88–1439.

Supreme Court of Iowa.

Aug. 16, 1989.

Barry A. Lindahl, Dubuque, for appellant.

Susan M. Bolte, Des Moines, for appellee.

Considered by LARSON, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

In this appeal we determine if an evaluation procedure established by the City of Dubuque and utilized by it in the promotion process is a mandatory subject of bargaining under Iowa Code section 20.9 (1985). We hold it is and affirm the district court judgment and decree that upheld the decision of the Iowa Public Employment Relations Board (PERB).

The facts material to this appeal are not in dispute. The Dubuque Policemen's Protective Association (DPPA) was certified as the exclusive bargaining representative for the police officers and detectives of the Dubuque Police Department (Department). In the fall of 1985, the Department announced that a new position of corporal would be added to the bargaining unit. The position of corporal would be just above that of patrol officer.

At the same time, the City of Dubuque (City) and the DPPA were negotiating a collective bargaining agreement for 1986 through 1987. The DPPA sought to negotiate supplemental pay, seniority, transfer, and evaluation for the corporal position. The City, however, did not respond to the DPPA's request.

A promotional examination was held for the corporal position on September 10–11, 1986. Officers who had served a minimum of four years were eligible to take the examination. On October 3, 1986, the Dubuque Civil Service Commission certified a list of patrol officers eligible for promotion to the corporal position. On October 6, 1986, the police chief distributed a memorandum to all corporal candidates on the list which detailed the selection process for the five new corporal positions.

This memorandum outlined the selection process and identified seven factors that would be considered. One of the factors to be considered was "performance evaluation." The memo went on to explain this factor in detail.

Each of the Patrol Supervisors will be asked to submit a structured performance evaluation based upon the following criterion: appearance, attitude toward police work, general knowledge of laws, policies and procedures, routine field performance, field performance under stress, officer safety, relationships with other officers and immediate supervisors,

relationships with citizens and leadership potential. In addition there will be a provision for the Patrol Supervisors to provide unstructured comments pertaining to any aspect of the candidate's performance. The evaluations will contain standardized evaluation guidelines to reduce inconsistency in ratings. Only supervisors who have worked with the candidate within the past year will be requested to evaluate performance of the candidate. Supervisors who have worked less than one month with the candidate during the past year will be excluded from evaluating the candidate. Self initiated field activity is an indicator of performance. Persons in supervisory and investigative activities must be self starters. Assessments of the numbers of field interviews and officer initiated calls will be made and candidates ranked accordingly.

The quality of product produced will be measured by scoring five offense reports selected at random for each candidate over the past six months. Scoring will be based on conformance to published procedure given to all officers at the time the standard offense report was changed.

Candidates' performance will be assessed by the three Shift Captains through an assessment exercise. The Commanding Officers will administer and evaluate an instrument, followed by a forced choice ranking of candidates based upon results of their evaluation.

After receiving this memorandum, the DPPA advised the City of its desire to discuss the evaluation procedure outlined in the memorandum. The City refused to negotiate the item and promoted five patrol officers to the rank of corporal. The DPPA filed a prohibited practices complaint with the PERB alleging the City had refused to negotiate a mandatory subject of bargaining by unilaterally implementing an evaluation guideline for promoting patrol officers to the rank of corporal. A PERB hearing officer determined that the City's refusal to bargain with the DPPA over the evaluation issue was a violation of the Public Employment Relations Act.

Upon review, PERB concluded the evaluation procedure was a mandatory topic of bargaining and affirmed the hearing officer's recommended decision. On the City's petition for judicial review, the district court affirmed the decision of the PERB. From this judgment and decree the City appeals.

I. Our scope of review of PERB decisions is at law. *Aplington Community School Dist. v. Iowa PERB*, 392 N.W.2d 495, 498 (Iowa 1986). We give weight to the PERB's construction of chapter 20 of the Iowa Code, but we are not bound by its determinations of law. *Id.* In determining the negotiability of a particular item, only the subject matter, not the merit, of a proposal is considered. *Id.*

It is important to determine whether a proposal is a mandatory or permissive subject of bargaining. If a proposal is a mandatory subject of bargaining, the public employer and the employee organization must meet to negotiate the terms of the proposal. *Northeast Community School Dist. v. PERB*, 408 N.W.2d 46, 47 (Iowa 1987). Impasse and arbitration procedures are available to settle disagreements about mandatory subjects of bargaining. *See id.* These protections do not exist for permissive subjects of bargaining.

II. The PERB argues that the promotion procedures outlined in the October 6, 1986 memorandum contained a performance evaluation component with specific criteria. This performance evaluation within the promotion process is, according to PERB, a mandatory subject of bargaining. Conversely, the City urges that the predominant characteristic of the memorandum is the process of selection of persons for promotion to corporal. According to the City, the evaluation procedure factor should not be separated from the total promotion process. The City contends that neither promotion nor the promotion procedure fall within the mandatory subjects of bargaining.

■ III. We first review the statutory list of the mandatory subjects of public

employer/employee bargaining. Iowa Code section 20.9 provides in part:

> The public employer and the employee organization shall meet at reasonable times, ... to negotiate in good faith with respect to ... evaluation procedures, procedures for staff reduction, in-service training and other matters mutually agreed upon....

We have adopted a restrictive and narrow approach to interpreting the subjects listed in section 20.9 when considering whether a specific disputed issue is subject to mandatory bargaining. *See City of Fort Dodge v. PERB*, 275 N.W.2d 393, 398 (Iowa 1979); *Charles City Community School Dist. v. PERB*, 275 N.W.2d 766, 772–73 (Iowa 1979). However, when considering the statutory subject of "evaluation procedures" we have given the term procedures its broad meaning. Thus, the identification of criteria used in evaluating an employee falls within the definition of evaluation procedures and is a mandatory bargaining subject under Iowa Code section 20.9. *See Northeast Community School Dist. v. PERB*, 408 N.W.2d 46, 49 (Iowa 1987); *Aplington Community School Dist. v. PERB*, 392 N.W.2d 495, 499 (Iowa 1986); *Saydel Education Ass'n v. PERB*, 333 N.W.2d 486, 487–89 (Iowa 1983).

We recognize that section 20.9 provides exceptions to the exclusive power, duty, and rights of the public employer under Iowa Code section 20.7. Iowa Code section 20.7 provides in part:

> Public employers shall have, in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and the right to:
>
> ....
>
> 2. Hire, promote, demote, transfer, assign and retain public employees in positions within the public agency.

The City asks that we consider the entire memorandum in determining whether its terms are subject to mandatory bargaining. It argues the predominant characteristic of the memorandum is promotion and therefore the City has no duty to bargain. The City cites *Clinton Police Dep't Bargaining Unit v. PERB*, 397 N.W.2d 764, 766–67 (Iowa 1986), as controlling authority. We recognize that in some situations we will look at the predominant characteristics of a proposal in determining if it is a mandatory bargaining subject under Iowa Code section 20.9. However, our recent decisions in *Northeast, Aplington* and *Saydel* clearly establish that the identification of criteria used by the employer to determine staff reduction and transfer falls within the mandatory subject of evaluation procedures. Our analysis and reasoning in these decisions is equally applicable to this case involving the criteria and procedures used by the employer to determine promotion.

The district court order affirming the decision of the PERB board is affirmed.

AFFIRMED.